UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

JOSHUA ADAM KAPLAN

Debtor.

_____/

Chapter 7
Case No. 25−48523−tjt
Hon. Thomas J. Tucker

## MOTION TO DETERMINE THE SCOPE OF THE AUTOMATIC STAY

Josh Kaplan ("Debtor"), by and through his attorneys, OSIPOV BIGELMAN, P.C., states as follows:

### Jurisdiction and Venue

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(G).

3.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The relief sought herein is based on 11 U.S.C. §§ 105(a) 362, and 541.

### Background and Facts

5.    The Debtor filed a Chapter 7 Bankruptcy petition on August 22, 2025.

6.    Prior to the filing of Kaplan's bankruptcy petition, on June 16, 2025, the Oakland County Circuit Court in <u>Comerica Bank v. Supply Line International, LLC et. al</u>[1]., Case No. 25-215602-CB ("Lawsuit") appointed Basil Simon ("Receiver") as receiver over <u>assets owned by SLI</u> ("Receiver Order").  **Exhibit 6-A.**

7.    The Receiver Order at ¶5 states that it "does not transfer ownership of the receivership assets nor ownership of SLI" to the Receiver.

---

[1] As a result of the bankruptcy filing, the bankruptcy estate has an 82% interest in Supply Line International, LLC ("SLI").

8.      The Receiver Order at ¶9 states that the Receiver is to take possession of electronically stored data…<u>belonging to SLI</u> that relate to the receivership assets.

9.      On or about June 30, 2025, Receiver was provided with credentials which authorized him to access data files on the Server owned by SLI, only.

10.     Pertinent to this bankruptcy case is the fact that the Server contains electronically stored data owned by the Debtor, including attorney-client privileged emails between Debtor and his attorney(s); information needed by the Debtor to complete his 2024 income tax returns; and information of affiliated entities whose direct and potentially indirect interests are property of the bankruptcy estate.  These include, but are not limited to:

        (1)     Supply Line International, LLC[2]

        (2)     Supply Line International Medical, LLC

        (3)     Supply Line International Real Estate Holdings, LLC

        (4)     Karim BLVD Real Estate Holdings, LLC

        (5)     Karim ASC, LLC

        (6)     Divided Sky, LLC

        (7)     Medical Venture Solutions, LLC

        (8)     Divided Sky Holdings, LLC; and

        (9)     Verified Laboratories, LLC

11.     The seizure of the Server and the exercise of control over the Debtor's property (electronically stored data) is problematic for the Debtor as it pertains to this bankruptcy case because:

        A.      The electronically stored data on the Server as it pertains to the Debtor is property of the bankruptcy estate.

_____

[2] Comerica's security interest may cover SLI's electronic data, but it does not have a security interest over the Debtor or any of his affiliated entities.

B. The electronically stored data on the Server includes the Debtor's emails, including attorney-client privileged communications between Debtor and his attorneys regarding pending litigation and expected future litigation.

C. The Trustee has made demands upon Debtor for documentation and has asked that he file his 2024 income tax returns, which is not possible without the Debtor's personal electronically stored data and the electronically stored data related to affiliated companies who need to file income tax returns contemporaneously with the Debtor.

D. Creditors have made demands upon Debtor for documentation pertaining to his financial affairs and those of his affiliated companies which included within the electronically stored data is located at least in part on the Server.

E. One of his creditors has filed a motion for a 2004 Examination seeking information pertaining to his financial affairs and those of his affiliated companies. ECF No. 46.

F. There exists pending litigation with at least four of his affiliated companies whose interest is property of the bankruptcy estate.

12. As such, the Debtor needs access to the information described above for the proper administration of his bankruptcy case.

13. The Receiver accepted an offer to sell the Server to an affiliate of SLI's manager which included an access agreement that would have preserved access to the electronically stored data on the Server for all parties in interest, but that sale was vetoed by Comerica.

14. After that sale was vetoed, the Receiver seized the Server, by unplugging it, dismantling it, and moving the dismantled components to a different location. The result of this action deprived the Debtor access to his electronically stored data, including his emails.

15. Prior to this action, there were no access issues for any interested party.

16. Instead, the Receiver has taken action in state court against the manager of SLI in order to obtain unfettered access to the Server, in an effort to exercise complete control of property of the estate in violation of Section 362 of the Code.

17.     The State Court has no right to adjudicate matters pertaining to the property of the estate as the bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate.

18.     Comerica, who hired the Receiver, has taken the position that because it has a security interest in the property of SLI, which owns the physical layer of the Server (but not the data owned by other authorized users including Debtor), it – through the Receiver – has the right to exercise dominion and control over the electronically stored data on the Server, , and that the Debtor "should have no expectation of privacy" in regard to his data.  **Exhibit 6-B**.

19.     Comerica's claims are factually incorrect and legally invalid, and are inconsistent with the Receiver Order, which grants the Receiver authority only over the "electronically stored data … belonging to [SLI].

20.     The Receiver has taken a more reasoned approach, acknowledging that it does not own all of the data on the Server, however, it has not made a reasonable proposal that provides the Debtor with his electronically stored data, and addresses his privacy and privilege concerns. **Exhibit 6-C**.

21.     The Debtor has submitted a proposal to the Receiver that meets everyone's needs and addresses everyone's concerns.  **Exhibit 6-C**.  However, this proposal was ignored.

## Applicable Law

Section 541(a) of the Bankruptcy Code defines what is property of a debtor's bankruptcy estate. It provides, in relevant part:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, <u>all legal or equitable interests of the debtor in property</u> as of the commencement of the case.

Pursuant to 28 U.S.C. § 1334, the bankruptcy court has "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." 28 U.S.C.A. § 1334. Murray v. Murray (In re Murray), 31 Bankr. 499, 501 (Bankr. E.D. Pa. 1983). This grant of jurisdiction indicates a conscious effort by Congress to provide the bankruptcy court special jurisdiction, and to preclude jurisdictional disputes between state and federal courts when both courts base jurisdiction on control of the same property. White v. White (In re White), 851 F.2d 170, 172-73 (6th Cir. 1988).

The filing of a bankruptcy petition also operates as an automatic stay of judicial proceedings and acts to "exercise control over the property of the estate." 11 U.S.C.A. § 362(a). Section 362 of the Bankruptcy Code states, in pertinent part:

> (a)      Except as provided in subsection (b) of this section, a [Chapter 13 Petition] . . . operates as a stay, applicable to all entities, of—

> (3) any act to obtain possession of property of the estate or to exercise control over property of the estate;

> (k) (1)  Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

## Discussion

There is not any reasonable dispute that the Debtor owns certain data on the Server, including, but not limited to:

A.      His personal financial information

B.      His emails including, but not limited to; attorney-client privileged emails

C.      The documents necessary for the Debtor to file his 2024 income tax returns;

D.      The documents in regard to the bankruptcy estate's interest in companies formally owned by the Debtor;

E.   The documents that the Debtor may be required to produce if the Court grants a 2004 motion seeking information pertaining to his financial affairs and those of his affiliated companies.  ECF No. 46.

("Debtor's Data").

As this information was property of the Debtor and is now property of the bankruptcy estate, the bankruptcy court has exclusive jurisdiction over the property.  As the Receiver, at the behest of Comerica has seized the Server, refused to provide reasonable access to the Debtor's data, and has exercised control over property of the estate, he has violated the automatic stay.

The Debtor is **not** yet seeking monetary sanctions against the Receiver or any other party, the Debtor only requests that this Court grant the following relief:

1.   Find that the Debtor's Data is property of the Debtor/bankruptcy estate;

2.   Find that the Bankruptcy Court has exclusive jurisdiction over the Debtor's Data;

3.   Find that any further action depriving the Debtor with access to the Debtor's Data or exercising control over the Debtor's Data would be a violation of the automatic stay; and

4.   Order the Receiver to image all of the SLI electronically stored data for its own use and turn over the Server to the Debtor or a neutral third party to ensure access for the Debtor and other interested parties.

Concurrence was requested for the relief sought herein was requested and not received.

WHEREFORE, the Debtor requests that the Court grant the relief more fully set forth in the proposed order attached hereto as **Exhibit 1.**

Respectfully submitted,

**OSIPOV BIGELMAN, P.C.**

DATED: November 11, 2025          */s/ Jeffrey H. Bigelman*
                                  JEFFREY H. BIGELMAN (P61755)
                                  Attorneys for Debtor
                                  20700 Civic Center Drive, Suite 420
                                  Southfield, MI 48076
                                  Tel: 248-663-1800/Fax: 248-663-1801
                                  jhb@osbig.com

**Exhibit 1**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

JOSHUA ADAM KAPLAN                          Chapter 7
                                            Case No. 25−48523−tjt
                                            Hon. Thomas J. Tucker

                        Debtor.
_____/


## MOTION TO DETERMINE THE SCOPE OF THE AUTOMATIC STAY

**THIS MATTER** having come before the Court pursuant to the Debtor's Motion, and service having been made pursuant to applicable rules, and the Court being duly advised in the premises:

**IT IS HEREBY ORDERED** that the Debtor's Motion to Determine the Scope of the Automatic Stay is granted.

**IT IS FURTHER ORDERED** that:

1. The Debtor's Data[3] is property of the Debtor/bankruptcy estate;

2. The Bankruptcy Court has exclusive jurisdiction over the Debtor's Data;

3. Any further action depriving the Debtor with access to the Debtor's Data or exercising control over the Debtor's Data would be a violation of the automatic stay; and

4. The Receiver shall image all of the SLI electronically stored data for its own use and turn over the Server to the Debtor or a neutral third party to ensure access for the Debtor and other interested parties within 14 days of the entry of this Order

---

[3] Capitalized terms shall have the same meaning ascribed to them in the Motion.

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

JOSHUA ADAM KAPLAN

                Debtor.
_____/

Chapter 7
Case No. 25−48523−tjt
Hon. Thomas J. Tucker

**NOTICE OF MOTION TO DETERMINE THE SCOPE
OF THE AUTOMATIC STAY**

      Debtor, Joshua Adam Kaplan, has filed a Motion with the Court to Determine the Scope of the Automatic Stay.

      **Your rights may be affected**. **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

      If you do not want the Court to grant the Motion, or if you want the Court to consider your views on the Motion, within fourteen (14) days from the date of service of the motion, you or your attorney must:

    1.     File with the Court a written response or an answer, explaining your position at:[4]

United States Bankruptcy Court
211 West Fort Street, Suite 1700
Detroit, Michigan 48226

      If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it within the above-referenced time period.

    2.     Mail a copy to:

Osipov Bigelman, P.C.
c/o Jeffrey H. Bigelman, Esq.
20700 Civic Center Drive, Suite 420
Southfield, Michigan 48076

---

[4]Response or answer must comply with F.R.Civ.P.8(b)(c) and (e)

3.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Respectfully submitted,

**OSIPOV BIGELMAN, P.C.**

DATED: November 11, 2025

_/s/ Jeffrey H. Bigelman_
JEFFREY H. BIGELMAN (P61755)
Attorneys for Debtor
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
Tel: 248-663-1800/Fax: 248-663-1801
jhb@osbig.com

**EXHIBIT 4**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

JOSHUA ADAM KAPLAN

                              Debtor.

_____/

Chapter 7
Case No. 25−48523−tjt
Hon. Thomas J. Tucker

## <u>CERTIFICATE OF SERVICE</u>

I hereby certificate that on November 11, 2025, I sent by First Class Mail and email to the following:

Stephen P. Stella, Esq.
SIMON, STELLA & ZINGAS, P.C.
Counsel for Receiver Basil Simon
645 Griswold St., Suite 3466
Detroit, Michigan 48226-4216
sstella@sszpc.com

I electronically filed (1) Debtor's Motion to Determine the Scope of the Automatic Stay, (2) Notice of Motion to Determine the Scope of the Automatic Stay, and (3) Certificate of Service with Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Marc M. Bakst on behalf of Creditor Comerica Bank
mbakst@bodmanlaw.com, lstewart@bodmanllp.com

Jason W. Bank on behalf of Creditor CSC Capital Group, LLC
jbank@kerr-russell.com, nnajor@kerr-russell.com

Douglas C. Bernstein on behalf of Interested Party Oxford Bank
dbernstein@plunkettcooney.com, kwebster@plunkettcooney.com

Jeffrey H. Bigelman on behalf of Debtor Joshua Adam Kaplan
jhb_ecf@osbig.com, tc@osbig.com;mk@osbig.com

Tracy M. Clark on behalf of Trustee Homer W. McClarty

[clark@steinbergshapiro.com](mailto:clark@steinbergshapiro.com)

Kimberly Ross Clayson on behalf of Creditor ZB Verified Investments LLC
[kclayson@taftlaw.com](mailto:kclayson@taftlaw.com),
[ttorni@taftlaw.com;DET_Docket_Assist@taftlaw.com;TStorm@taftlaw.com](mailto:ttorni@taftlaw.com)

Cheryl Cook on behalf of Creditor Mercedes-Benz Vehicle Trust
[bknotices@potestivolaw.com](mailto:bknotices@potestivolaw.com), [cdcooklaw@gmail.com](mailto:cdcooklaw@gmail.com)

Robert J. Diehl, Jr. on behalf of Creditor Comerica Bank
[rdiehl@bodmanlaw.com](mailto:rdiehl@bodmanlaw.com)

Danielle Love on behalf of Creditor CSC Capital Group, LLC
[dkus@kerr-russell.com](mailto:dkus@kerr-russell.com)

Homer W. McClarty
[trustee@morganmcclarty.com](mailto:trustee@morganmcclarty.com),
[MI34@ecfcbis.com;hwm1@trustesolutions.net;annbrewer632@gmail.com](mailto:MI34@ecfcbis.com)

Todd J Ruchman on behalf of Creditor JPMorgan Chase Bank, N.A.
[amps@manleydeas.com](mailto:amps@manleydeas.com)

Molly Slutsky Simons on behalf of Creditor JPMorgan Chase Bank, N.A.
[amps@mdklegal.com](mailto:amps@mdklegal.com)

<div style="text-align:right">

Respectfully submitted,
**OSIPOV BIGELMAN, P.C.**

</div>

DATED: November 11, 2025
  */s/ Jeffrey H. Bigelman*
  JEFFREY H. BIGELMAN (P61755)
  Attorneys for Debtor
  20700 Civic Center Drive, Suite 420
  Southfield, MI 48076
  Tel: 248-663-1800/Fax: 248-663-1801
  [jhb@osbig.com](mailto:jhb@osbig.com)

**EXHIBIT 6-A**

**STATE OF MICHIGAN**
**IN THE SIXTH JUDICIAL CIRCUIT COURT (OAKLAND COUNTY)**

COMERICA BANK, a Texas banking
association,

        Comerica,

v.

SUPPLY LINE INTERNATIONAL, LLC a
Michigan limited liability company, and JOSHUA
KAPLAN, an individual,

        Defendants.

Case No.  25- 215602-CB

Honorable Victoria Valentine.

---

BODMAN PLC
Jeffrey Raphelson (P38036) (he/him/his)
Nashara A.L. Peart (P83078) (she/her/hers)
Sixth Floor at Ford Field
1901 St. Antoine
Detroit, MI 48226
(313) 259-7777
Attorneys for Comerica

---

**STIPULATED ORDER APPOINTING RECEIVER**

## STIPULATED ORDER APPOINTING RECEIVER

At a session of said Court, held in the
Oakland County Circuit Court, State of Michigan

on June ___, 2025

PRESENT: Hon. _____
Oakland Circuit Court Judge

This matter having come before the Court under MCR 2.622(B)(1) and by stipulation among Comerica Bank and Supply Line International, LLC ("Defendant SLI") and the court being duly advised on the premises hereby appoints a receiver and imposes ancillary relief to assist the receiver as follows:

IT IS HEREBY ORDERED that Basil Simon of Simon, Stella & Zingas, P.C., is experienced and qualified to manage and maintain the property at issue in this case, as required by MCR 2.622(B) and MCL 554.1017, and is appointed as receiver ("Receiver") over the Receivership Assets (as that term is defined below) to take possession, custody, and control of them and to aid in their preservation and liquidation.

## RECEIVER CONTROL OVER RECEIVERSHIP ASSETS AND DOCUMENTS

IT IS FURTHER ORDERED that the Court hereby takes exclusive jurisdiction and control of the following personal property as more particularly described in the October 24, 2024 security agreement as follows:

"all personal property of [Defendant SLI] including, without limitation, all of the following property [Defendant SLI] now or later owns or has an interest in, wherever located:

all Accounts Receivable (for purposes of this Agreement, "Accounts Receivable" consists of all accounts, general intangibles (including, without limit, payment intangibles and software), chattel paper (including, without limit, electronic chattel paper and tangible chattel paper), contract rights, deposit accounts, documents (including, without limit, negotiable documents), instruments (including, without limit, promissory notes) and rights to payment evidenced by chattel paper

2

documents or instruments, health care insurance receivables, commercial tort claims, letters of credit, letter of credit rights, supporting obligations, money and rights to payment for money or funds advanced or sold),

all Inventory (including, without limit, returns and repossessions),

all investment property (including, without limit, securities, securities entitlements, and financial assets), all securities accounts and all investment property contained therein, including, without limitation, all securities and securities entitlements, financial assets, instruments or other property contained in such securities accounts, and all other investment property, financial assets, instruments or other property at any time held or maintained in such securities accounts, together with all investment property, financial assets, instruments or other property at any time substituted for all or for any part of the foregoing, and all interest, dividends, increases, profits, new investment property, financial assets, instruments or other property and or other increments, distributions or rights of any kind received on account of any of the foregoing, and all other income received in connection therewith,

all Equipment and Fixtures,

specific items listed below and/or on attached Exhibit A, if any:

all Software (for purposes of this Agreement "Software" consists of all (i) computer programs and supporting information provided in connection with a transaction relating to the program, and (ii) computer programs embedded in goods and any supporting information provided in connection with a transaction relating to the program whether or not the program is associated with the goods in such a manner that it customarily is considered part of the goods, and whether or not, by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods, and whether or not the program is embedded in goods that consist solely of the medium in which the program is embedded),

all general intangibles (including, without limit, software) acquired or used in connection with any of the Collateral,

all goods, instruments (including, without limit, promissory notes), documents (including, without limit, negotiable documents), policies and certificates of insurance, deposit accounts, deposits, money, investment property or other property (except real property which is not a fixture) which are now or later in possession or control of Bank, or as to which Bank now or later controls possession by documents or otherwise,

all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including, but not limited to, stock splits, stock rights, voting and preferential rights), products, and all cash and non-cash proceeds of or pertaining to the above, including, without limit, insurance

3

4915-3918-8553_5

and condemnation proceeds, and cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by [Defendant SLI], and

all of [Defendant SLI]'s Books and records with respect to any of the foregoing (including, without limit, computer software and the computers and equipment containing said books and records) . . . "

along with all other documents and personal property of Defendant SLI as the same may be described in any other loan documents between Comerica and Defendant SLI (collectively, "Receivership Assets").

IT IS FURTHER ORDERED that Defendant SLI and its officers or agents and defendant Kaplan, as applicable, shall turnover or provide the Receiver access to the Receivership Assets in accordance with MCL 554.1023.

IT IS FURTHER ORDERED that Defendant SLI and its past and present officers, directors, members, employees, trustees, agents, representatives, and any entity controlled by Defendant SLI is directed to cooperate with the Receiver in accordance with MCL 554.1023 in the transition of the management of the Receivership Assets and shall make immediately available to the Receiver all of its records that comprise part of the Receivership Assets so that the Receiver may adequately account for the Receivership Assets and any associated revenue collected or owing through the date the Receiver is appointed, including, but not limited to, all:

(a)     Communication/correspondence files related to the Receivership Assets;

(b)     Documents identifying and summarizing all pending litigation related to Defendant SLI and/or Receivership Assets;

(c)     All trademarks, copyrights, patents, and any other intellectual property;

(d)     All contracts, agreements, and operating licenses related to the Receivership Assets;

4

4915-3918-8553_5

(e)     All associated invoices relating to the Receivership Assets;

(f)     All documents, deeds, insurance information, policies, books, records and computer files, software, and records concerning the ownership, operation and management of the Receivership Assets; and

(g)     Such other records pertaining to the ownership, operation, and management of the Receivership Assets as may be reasonably requested by the Receiver.

IT IS FURTHER ORDERED that this Order does not transfer ownership of the Receivership Assets nor ownership of Defendant SLI to the Receiver.  The Receiver is not acquiring any ownership of the Receivership Assets nor ownership of Defendant SLI.  The Receiver shall not be considered the owner of the Receivership Assets nor of Defendant SLI for any purpose, including but not limited to any determination of experience ratings for any insurance purposes, including but not limited to any determinations by the National Committee on Compensation Insurance.  Moreover, Defendant SLI is not deemed to be under common ownership with Receiver for insurance purposes.  The Receiver and Defendant SLI are not business entities held by a common majority owner.  None of the employees of Defendant SLI shall be considered employees of the Receiver for any purpose.

## RESTRAINT OF ACTIONS BY THIRD PARTIES

IT IS FURTHER ORDERED that Defendant SLI and all persons, other than the Receiver and Comerica or those acting in furtherance of a direction from the Receiver or Comerica, who receive actual notice of this Order by personal service or otherwise are hereby restrained and enjoined in accordance with MCL 554.1024 from:

(a)     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, obtaining or enforcing a lien or security interest or other interest in, or otherwise disposing of any assets or documents of the Receivership Assets;

(b)     Obtaining possession of, exercising control over, or enforcing a judgment against the Receivership Assets;

(c)     Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any assets or documents of the Receivership Assets; and

(d)     Doing any act that would interfere with the Receiver taking custody, control, possession, or management of the Receivership Assets; or would interfere with the exclusive jurisdiction of the Court over the Receivership Assets.

IT IS FURTHER ORDERED subject to the other provisions of this Order governing the rights of Comerica, that any financial institution, business entity, and/or person maintaining or having custody or control of any asset or document of the Receivership Assets which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

(a)     Hold and retain within its control and prohibit (other than by the Receiver) the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance,

disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

1.      on behalf of, or for the benefit of Defendant SLI; and

2.      that are subject to access or use by, or under the signatory power of Defendant SLI.

(b)     With regard to the assets, funds, documents or other property identified in subsection (a), provide the Receiver an immediate statement setting forth:

1.      The identification number of each account or asset titled in the name, individually or jointly, of Defendant SLI, or held on behalf thereof, or for the benefit thereof, including all trust accounts managed on behalf of Defendant SLI or subject to Defendant SLI's control;

2.      The balance of each such account, or a description of the nature and value of such asset;

3.      The identification and location of any safe deposit box, commercial mailbox, or storage facility that is titled in the name, individually or jointly, of Defendant SLI, whether in whole or in part; and

4.      If the account, safe deposit box, storage facility or other asset has been closed or removed, the date closed or removed and the balance on said date.

(c)     Immediately honor any requests by the Receiver with regard to transfers of assets and/or documents that are Receivership Assets.

7

## DUTIES OF DEFENDANT REGARDING ASSETS AND DOCUMENTS

IT IS FURTHER ORDERED that Defendant SLI shall:

(a)     As soon as practicable and in any event within three business days following the entry of this Order, take such steps as are reasonably necessary to turn over control to the Receiver all of the Receivership Assets;

(b)     As soon as practicable and in any event within three business days following the entry of this Order, provide Comerica and the Receiver with an accounting of all Receivership Assets; and

(c)     Immediately following the entry of this Order, provide the Receiver with access to the Receivership Assets, including all passwords required to access any computer, electronic account, or digital file or telephonic data containing Receivership Assets.

## BOND

IT IS FURTHER ORDERED that under MCR 2.622(G) the Receiver shall immediately present a sworn statement that it will perform its duties faithfully and shall post a cash deposit or nominal bond in the amount of $10,000.

## POWERS AND DUTIES OF RECEIVER

IT IS FURTHER ORDERED that immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver is authorized in accordance with MCL 554.1022 to take any actions the Receiver deems reasonable and appropriate pursuant to the authority granted under this Order to take possession of, to exercise full control over, and to prevent waste and to preserve, manage, maintain, secure and safeguard the Receivership Assets, and take such other actions as may be necessary and appropriate to take possession, to exercise full control, to prevent waste and to preserve, secure and safeguard the Receivership Assets, including taking

8

possession of and copying: all books, records, notes, memoranda, contracts, loan documents, deeds, bills of sale, cancelled checks, check ledgers, calendar notes, diary notes, notes, records, ledgers, electronically stored data, tape recordings, computer discs, or any other financial documents or financial information in whatever form belonging to Defendant SLI that relates to the Receivership Assets. Without limiting the generality of the foregoing, the Receiver is authorized to:

(a)    Take all action determined by the Receiver to be necessary or appropriate to safeguard and preserve all tangible and intangible Receivership Assets and all licenses used in connection with the operation of the Receivership Assets including those out of state Receivership Assets;

(b)    Have immediate access to any business premises of Defendant SLI where any Receivership Asset is located, including hiring of a locksmith or other court officer to gain access to any real properties, leased locations, or the Receivership Assets;

(c)    Assume custody, control and possession of the Receivership Assets including those out of state Receivership Assets;

(d)    Sue for, collect, and manage all Receivership Assets including those out of state Receivership Assets;

(e)    List, market, and sell or liquidate the Receivership Assets, subject to Comerica's written consent and, to the extent required under applicable law, the Court's approval;

(f)    Allow Comerica, its counsel, and other professionals access to the Receivership Assets at reasonable times to inspect the Receivership Assets and all books and records thereof;

9

4915-3918-8553_5

(g)   Collect any unpaid, future, or delinquent revenue, rent, issues and profits regardless of when accrued derived from or related to any Receivership Asset including those out of state Receivership Assets;

(h)   Adopt or reject any executory contract in accordance with MCL 554.1022, subject to Comerica Bank's approval;

(i)   Enforce, terminate, or approve any contracts and/or agreements regarding the Receivership Assets, subject to Comerica's approval;

(k)   Borrow from Comerica such funds as may be required to pay the costs and expenses of the administration of the receivership, including but not limited to:

      (1)   the maintenance, preservation, protection, management, marketing, and sale of the Receivership Assets;

      (2)   the collection or preservation of the Receivership Assets and/or associated revenue arising from it;

      (3)   city, county, state and federal taxes and assessments pertaining to the Receivership Assets on a current basis;

      (4)   maintenance of adequate insurance; and

      (5)   to issue Receiver's certificates as evidence thereof, which certificates shall constitute a lien upon the Receivership Assets and associated revenue, which lien shall be prior to all other liens, titles or claims with respect to the Receivership Assets except the security interests held by Comerica;

(l)   Manage, maintain and operate the Receivership Assets including those out of state Receivership Assets;

10

4915-3918-8553_5

(m)    Insure the Receivership Assets as is advisable and/or necessary in cooperation with Comerica to the extent the Receivership Assets are not already insured;

(n)    Choose, engage, and employ attorneys, accountants, appraisers, brokers, and other independent contractors and technical specialists (collectively, "Professionals"), that the Receiver deems advisable or necessary in the performance of its duties and responsibilities under the authority granted by this Order;

(o)    Make payments and disbursements generated by and/or collected from the Receivership Assets that are necessary or advisable for carrying out the directions of, and/or exercising the authority granted by, this Order, subject to the Budget (defined below);

(p)    Allow all out of state acts, actions, or proceedings against or relating to all Receivership Assets as determined by the Receiver to be necessary or appropriate to safeguard, preserve, and liquidate all Receivership Assets including any ancillary act, action, or proceeding that is necessary and appropriate to carry out this Order;

(q)    Institute, compromise, adjust, defend, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Receivership Assets or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

(r)    Conduct investigations and to issue subpoenas to obtain documents and records pertaining to, or in aid of collection and liquidation of the Receivership Assets;

(s)    Consent to the dissolution of the receivership in the event that Defendant SLI may compromise or satisfy the claim that gave rise to the appointment of the Receiver,

11

provided, however, that no such dissolution shall occur without a motion by Defendant SLI, service of the same on those parties who received a copy of this Order and entry of an order of the Court approving such relief; and

(t)     Repay monies to Comerica as provided for herein.

For clarity, nothing in this Order requires the Receiver to file any tax returns related to the Receivership Assets. The Receiver shall only be authorized to file such tax returns to the extent that (a) applicable law, whether federal or state (or any subdivision thereof), mandates the filing of such tax returns by a receiver for the Receivership Assets or (b) would realize a refund or other benefit from filing such tax returns.

IT IS FURTHER ORDERED that the Receiver shall not have the following powers:

(e)     To exercise any voting rights of the members of Defendant SLI under its articles, operating agreements, or applicable law, including any action to dissolve or liquidate Defendant SLI or to place Defendant SLI in any bankruptcy, insolvency or other creditor adjustment proceeding, under state or federal law, including but not limited to a bankruptcy proceeding under the United States Bankruptcy Code;

(d)     To file any state or federal income tax returns by or on behalf of Defendant SLI. In this regard, the Receiver shall make available to Defendant SLI those Receivership Assets necessary to permit Defendant SLI to timely file any required federal and state income tax returns.

## BORROWING FROM COMERICA BANK

IT IS FURTHER ORDERED that the Receiver is authorized to borrow from Comerica those amounts which Comerica is willing to lend to the Receiver, to permit the Receiver to carry out its duties under this Order. Such loans shall be "protective advances" and added to Defendant SLI's Indebtedness to Comerica, shall be evidenced by receivership certificates or notes, under which Comerica's right of recourse shall be limited to the Receivership Assets and shall be non-recourse as against the Receiver. Prior to the entry of this Order, the Receiver and Comerica have agreed to the amount of the Receiver's compensation. The Receiver and Comerica will agree on a budget regarding the operation of the receivership ("Budget") promptly after entry of this Order. Defendant SLI shall have the opportunity to review the Budget. The Receiver shall make disbursements only in accordance with the Budget, as the same may be amended from time to time by the Receiver, with the written approval of Comerica.

## LIMITATION OF RECEIVER'S AND PROFESSIONALS' LIABILITY

IT IS FURTHER ORDERED that, except for an act of gross negligence or willful misconduct, the Receiver and the Professionals shall not be liable for any loss or damage incurred by Defendant SLI, its officers, agents, servants, employees and attorneys or any other person, by reason of any act performed or omitted to be performed by the Receiver and/or the Professionals in connection with the discharge of the Receiver's duties and responsibilities in accordance with MCL 554.1028. Additionally, in the event of a discharge of the Receiver either by dissolution of the receivership or order of the Court, the Receiver shall have no further duty whatsoever except as otherwise ordered by the Court.

Neither Comerica nor the Receiver shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of Defendant SLI or the Receivership Assets arising out of or relating to events or circumstances occurring prior to the entry of this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Defendant SLI, and any liability to which Defendant SLI is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Receivership Assets and operation of Defendant SLI's businesses (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). Neither Comerica nor the Receiver shall be obligated to advance any funds to pay any Pre-Receivership Liabilities.

## PROFESSIONAL FEES

IT IS FURTHER ORDERED that the Receiver and any Professionals retained by the Receiver with Comerica's consent are entitled to reasonable compensation for the performance of their duties under this Order and for the cost of actual out-of-pocket expenses incurred by them, subject to the Budget, which compensation shall be derived exclusively from the Receivership Assets. At that time, the Receiver and Professionals shall file with the Court and serve on Defendant SLI and Comerica fee applications with regard to any compensation to be paid to the Receiver and the professionals.

Not later than the 14th day of each calendar month following the entry of this Order, the Receiver shall file with the Court and serve on the parties who have filed appearances, a monthly accounting of all receipts and disbursements concerning the performance of its duties under this Order, and a final accounting within 30 days after termination of the receivership.

14

4915-3918-8553_5

## DISPOSITION OF PROCEEDS

IT IS FURTHER ORDERED that all proceeds collected by the Receiver from the Receivership Assets shall be distributed as follows:

(a)    Approved Receivership and Professional Fees and expenses incurred by them after the date of entry of this Order that are in accordance with the Budget;

(b)    The indebtedness due to Comerica;

(c)    With Court approval:

    (i)    In payment of any other amounts determined by the Court to be due to secured lenders, in the order of priority and solely with respect to proceeds related to the disposition of any portion of the Receivership Assets securing their respective claims;

    (ii)    After payment in full of all amounts due in (a) through (c) above, to the unpaid unsecured creditors of Defendant SLI on a pro-rata basis in relation to the amount of their claims; and

    (iii)    Finally, to the members of Defendant SLI on a pro-rata basis based upon their respective ownership interests in Defendant SLI.

15

4915-3918-8553_5

## STAY OF ACTIONS

IT IS FURTHER ORDERED that upon entry of this order a stay in the manner and scope provided by MCL 554.1024 is entered and enforceable as provided therein. Except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within 30 days of receipt by the Receiver, any such person or entity may thereafter seek an Order of the Court with regard to the relief requested.

## TERMINATION OF RECEIVERSHIP

IT IS FURTHER ORDERED that upon the earlier of (i) payment in full of all indebtedness due to Comerica, or (ii) the date that all Receivership Assets have been fully administered or expressly abandoned by the Receiver, the Receiver and Comerica shall stipulate to an order terminating the receivership created by this Order. Upon entry of the order terminating the receivership, all remaining Receivership Assets (if any) in the possession, custody and/or control of the Receiver shall be turned over to Defendant SLI. The Receiver shall also turn over all information needed to provide Defendant SLI with complete and unfettered access to any then remaining Receivership Assets.

## JURISDICTION

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over this action as provided by law, and over the Receivership Assets and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order. Unless otherwise ordered by the Court, the receivership shall terminate with respect to any of the Receivership Assets upon the

16

earliest of the sale or liquidation of such Receivership Assets by the Receiver with Comerica's written consent or further order of the Court.

SO ORDERED, this ___ day of June, 2025.

/s/ Victoria A. Valentine
June 16, 2025
HON. CIRCUIT COURT JUDGE
VICTORIA A VALENTINE                mt

*Stipulated to by:*
BODMAN PLC                                    NATHAN LAW PLC

*/s/Jeffrey G. Raphelson*                       */s/ Kenneth A. Nathan (with consent)*
Jeffrey G. Raphelson (P38036)                  Kenneth A. Nathan (P39142)
Attorneys for Plaintiffs                       Limited appearance for Defendant SLI
                                               under MCR 2.117 for entry of this Order.

17

**EXHIBIT 6-B**

| From: | Bakst, Marc |
| --- | --- |
| To: | Jeff Bigelman |
| Cc: | Diehl, Robert; Raphelson, Jeffrey; Monique Kallabat |
| Subject: | RE: Joshua Kaplan - 25-bk-48523 |
| Date: | Thursday, October 23, 2025 4:16:02 PM |
| Attachments: | image005.png |
| | image007.png |
| | image001.png |

<div style="background:#1560a8;color:white;text-align:center">This message was sent securely using Zix<sup>®</sup></div>

Jeff,

The server is property of SLI, and not the debtor. It is in the control of the receiver, who was appointed June 16, 2025. The receiver had to remove the server from leased premises where it was located when the landlord demanded surrender of the premises for failure of SLI to pay rent. That removal on September 26,2025, preserved the server and the information on it. Before the removal, and subsequently, access to information on the server was and remains stalled because the debtor and the managers of SLI have failed and refused, and continue to fail and refuse, to provide the password to the receiver. The receiver has engaged experts to supervise access and preserve the integrity of the information. Further, it is our understanding that the receiver has offered to remove from the server SLI data only under the supervision of Ken Morgan and to defer issues of access to other data until later. That reasonable offer has not been accepted.

In sum, there is nothing "haphazard" and no "spoilation". Any and all difficulties are the result of the conduct of your client and the managers of SLI.

If the debtor stored his personal information on the SLI server, he should have no expectation of privacy. Provide the password.

In addition to documents and computer records, Comerica is seeking dates for the 2004 examination of the debtor by deposition after the password is supplied. Provide proposed dates or confirm that the debtor is not cooperating.

Marc


**Marc M. Bakst**
313-393-7530
MBakst@BODMANLAW.COM



ATTORNEYS & COUNSELORS

**From:** Jeff Bigelman <jhb@osbig.com>
**Sent:** Wednesday, October 22, 2025 4:18 PM
**To:** Bakst, Marc <MBakst@BODMANLAW.COM>
**Cc:** Diehl, Robert <RDiehl@BODMANLAW.COM>; Raphelson, Jeffrey <JRaphelson@BODMANLAW.COM>; Monique Kallabat <mk@osbig.com>
**Subject:** RE: Joshua Kaplan - 25-bk-48523

**CAUTION: External Sender.**

Marc

Are you seeking an examination or a document production or both?

In regard to documents, as you know, at your client's direction the receiver seized the server that contained information relevant to Comerica, but also information irrelevant to Comerica, and property of Mr. Kaplan.

It is my understanding that due to the haphazard manner in which the server was handled that none of the information is currently accessible.

I bring this up for a few reasons (1) if you are seeking documents we may not have anything to produce for the reasons stated above, (2) your client's negligent actions may result in spoliation claim against Comerica, and (3) the seizure of property belonging to Mr. Kaplan may give rise to sanctions for violating the automatic stay. There are also other creditors seeking information from Mr. Kaplan which is on the server that you had seized.

Please advise what steps are being taken to ensure that Mr. Kaplan's property, other company's information, and attorney-client privileged communications are not being disturbed or viewed.

Thank you.

Sincerely,

**OSIPOV BIGELMAN, P.C.**
Jeffrey H. Bigelman, Esq.
20700 Civic Center Drive
Suite 420
Southfield, MI 48076
248.663.1800- Main line
248.663.1801- Facsimile
jhb@osbig.com
www.osbig.com

**EXHIBIT 6-C**

| From: | Jeff Bigelman |
|---|---|
| To: | "Stephen Stella" |
| Cc: | Basil Simon; Monique Kallabat |
| Subject: | RE: Josh Kaplan Bankruptcy- Data and Receivership Issues Regarding SLI |
| Date: | Monday, November 3, 2025 1:22:00 PM |
| Attachments: | image001.png |

Steve/Basil-

I spoke to my wife who is an expert in this area, advised her of each party's concerns and had her put together a proposal that meets everyone's needs and addresses everyone's concerns.

A few things to note first:

1. Mr. Kaplan is the only party who has an interest in everything on the servers including:

    A. Exchange server that contains attorney-client privileged emails and HIPAA-protected emails

    B. Documents (including those protected by HIPAA and/or containing PII) and QuickBooks files for multiple companies

    C. Comerica does not own the data or have a security interest in the data.

    D. Maintaining the metadata so that the data can be authenticated FOR VARIOUS REASONS.

<div align="center">*****</div>

2. The simplest solution is to have a 3rd party make a carbon copy of the server (under supervision) and give the server back to Mr. Kaplan. he will then provide the data that the receivers and their clients want; if there is a dispute the carbon copy will already be in the possession of the 3rd party.

3. If you are unwilling to give the server back to Mr. Kaplan, an outside IT company or Neutral Forensic Vendor (NFV) should be engaged to:

    A. Hold the servers and their encrypted images

    B. Segregate files scoped for all interested parties

    C. Provide hashed forensic imaging

    D. Escrow the universal password

    E. Enforce audit trails

The NFV would house the data and allow unfettered access to Mr. Kaplan and the other non SLI entities for the companies and Mr. Kaplan to fulfill their obligations.

4. SLI can provide a data map of the server and the NFV will split out hashed copies of the files and Quickbooks QBW/QBB/ND/TLGs for SLI. Anything that falls under a privilege filter (such as attorney client protections) could be quarantined. SLI or its agents would observe as they make scoped images of files for interested parties

Please let me know if this is acceptable. Thank you.

Sincerely,

**OSIPOV BIGELMAN, P.C.**

Jeffrey H. Bigelman, Esq.
20700 Civic Center Drive
Suite 420
Southfield, MI 48076
248.663.1800- Main line
248.663.1801- Facsimile
jhb@osbig.com
www.osbig.com





CONFIDENTIALITY NOTICE:
This email message and any attachments to it, is intended only for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient, but do not wish to receive communication through this medium, please so advise the sender immediately.

**From:** Stephen Stella <sstella@sszpc.com>
**Sent:** Thursday, October 30, 2025 2:22 PM
**To:** Jeff Bigelman <jhb@osbig.com>
**Cc:** Basil Simon <bsimon@sszpc.com>
**Subject:** RE: Josh Kaplan Bankruptcy- Data and Receivership Issues Regarding SLI

Jeff

It was good speaking with you and Basil today.  I am responding first to your email to Basil of yesterday and then, as indicated,  I am including the proposal via emails below by our I.T. guy Josh Blake regarding getting access to the Quick Book records.

We would like to address some, but not all, of the statements in your messages concerning rights and access to data on SLI's servers.

As we discussed in our call, we do not and have not asserted that we own all data on SLI's servers. (To our knowledge, neither has Comerica.) However, SLI had access to all data Josh Kaplan and the "Other Entities" voluntarily stored on SLI's servers.  We may or may not need to access that information depending on what SLI's records on the server show.  For the time being, we want to only access SLI's records.  As noted in our conversation, however, there are records stored on the server for other entities which are either in a Receivership (with John Polderman as counsel) and one that is about to go into it with Stuart Gold as proposed receiver.  They are going to want those records as well. Having said that though, as receiver,  we have the same rights to access data on SLI's servers that it had and we cannot agree to an arrangement that would prevent our having access to all data to which SLI had access.

We will provide the Other Entities or their designees with copies of the VHDX files associated with their data. As you may know, all data environments on the SLI Shared System, as previously operated, were virtual. With copies of the VHDX files, the Other Entities can reconnect to their data on any computer, provided they have copies of the relevant programs (e.g., QuickBooks) and the passwords needed for access. This is exactly what the Other Entities would have had to do to access their data if they had taken possession of the servers.

With respect to the consequences of disconnecting the SLI servers from their previous operating environment, they are easily addressed by updating the appropriate DNS records (domain configuration and static IP) to point to the new internet connectivity environment at the new location.  Again, this is exactly what the Other Entities would have had to do if they had taken possession of the servers. So long as the servers

were leaving 42400 Grand River, this step was necessary. Note also, this primarily affects the operating email system and internet access. Historical emails and other files are accessible even without updating DNS records.

Removing the server did not make it impossible for Josh Kaplan or Ken Morgan to provide the credentials and passwords needed to access SLI's data.

 We make the same offer of copies of the VHDX files to Josh Kaplan, however we need clarity on whether the VHDX copies should go to him or to Trustee Homer McClarty.

With respect to your assertion that some of the data on SLI's servers is covered by the attorney-client privilege, you need to provide more information about these supposed communications for us to evaluate it. We don't know what is on the server as far as this subject is concerned.

We reiterate that during removal, no data was altered or deleted. The VHDX copies we will provide are identical to the originals, which are securely stored, maintaining full data integrity. Thus, there is no violation of the automatic stay (which would apply only to Josh Kaplan's data) or other law and Josh Kaplan and the Other Entities will have full use of their data.

Below are two emails from Josh Blake containing his  proposal and a follow up clarification email regarding accessing the information on the servers made during a conference call on which your client was present although I note your client was not copied on the email and may not have had written confirmation of the process to be used by Josh Blake. Morgan has not responded to this other than to reiterate his previous position and asserting unfounded claims regarding corruption of files etc…..

**From:** Joshua Blake <josh@singlepointit.com>
**Sent:** Monday, October 20, 2025 2:52 PM
**To:** Kenneth Morgan <morgan.kb@eviae.com>; Basil Simon <bsimon@sszpc.com>
**Subject:** SLI Server Proposal

qemu-img, then use software like UTM or Parallels Desktop. When we send them these files, some basic info (like the file's creation date) might change, but everything inside the virtual machine—its data, settings, and setup—will stay exactly the same as the original. This approach keeps the systems secure while giving them full freedom to explore and use the virtual environments on your own.

Let me know if we can work something out.  The hearing on the motion to compel is on November 5 and does not involve your client.  As we discussed, there is a contempt hearing on November 7th I believe filed by John Polderman to hold Morgan in contempt before Judge Valentine.

**Stephen P. Stella, Esq.**
**Of Counsel**
SIMON, STELLA & ZINGAS, P.C.
645 Griswold St., Suite 3466
Detroit, Michigan 48226-4216
313.962.6400 Ext.225
313.402.9320  Mobile
313.963.4614   Fax
sstella@sszpc.com

---

**From:** Jeff Bigelman <jhb@osbig.com>
**Sent:** Wednesday, October 29, 2025 12:27 PM
**To:** Basil Simon <bsimon@sszpc.com>; Stephen Stella <sstella@sszpc.com>
**Cc:** Monique Kallabat <mk@osbig.com>
**Subject:** Josh Kaplan Bankruptcy- Data and Receivership Issues Regarding SLI

Basil / Steve,

I am writing regarding your receivership of SLI. It is my understanding that you were engaged by Comerica, which appears to have been directing decisions concerning the servers and the data contained on them. My concerns relate to the data as it pertains to Mr. Kaplan's bankruptcy proceedings.

Comerica has taken the position that it owns all data on the server. I do not believe that position has any legal or factual basis, and it potentially exposes both Comerica and you to sanctions for violation of the automatic stay.

I have received document requests from counsel for both the bankruptcy trustee and creditors of Mr. Kaplan. In addition, access to the server data is necessary for Mr. Kaplan to prepare and file his 2024 income tax returns, as requested by the Trustee, which necessarily includes returns for entities in which he holds an interest. I am also concerned about the presence of